IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BUDDY LEE CRINER, } | | |
| TDCJ-CID NO.1249251, } | | |
| Plaintiff, } | | |
| v. } | | CIVIL ACTION G-06-0504 |
| TODD BOUTON, *et al.*, } | | |
| Defendants. } | | |

OPINION ON DISMISSAL

Plaintiff Buddy Lee Criner, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a complaint pursuant to 42 U.S.C. § 1983 and a more definite statement, in which he alleges that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants have filed a motion for summary judgment. (Docket Entry No.57). Plaintiff has filed a response to defendants' motion for summary judgment, which he has entitled "Motion for Summary Judgment." (Docket Entry No.58). To the extent that plaintiff seeks summary judgment, the Court will deny such motion, grant defendants' motion for summary judgment, and dismiss the complaint with prejudice.

I. BACKGROUND

Plaintiff claims the following events gave rise to the pending complaint: When plaintiff arrived at the Stringfellow Unit on March 8, 2005, he was medically unassigned. (Docket Entry No.1, page 6). In March, 2005, Classification Chief Dickerson assigned plaintiff to do field work. (Docket Entry No.1-3, page 8). Plaintiff filed Step 1 Grievance No.2005131582 in April 2005, complaining of the assignment. (*Id.*, pages 8-9). Warden Negbenebor denied the grievance in May 2005, with a notation that plaintiff's job assignment

was compatible with his current medical restrictions and that in accordance with UTMB policy, plaintiff was not disabled.  (*Id.*, page 9).

In October 2005, plaintiff was examined by Dr. Dumas, who ordered treatment for a fungal condition on plaintiff's feet.  (Docket Entry No.39, page 9).  On October 21, 2005, Dr. Dumas issued a canvas shoe pass because of the fungal condition.  (Docket Entry No.1, page 5).  On January 25, 2006, PA Todd Bouton refused to renew the canvas shoe pass.  (Docket Entry No.39, page 4).  On the same day, Classification Chief Charles Dickerson assigned a plaintiff to be a SSI janitor on a cell block.  (*Id.*).  On February 18, 2006, plaintiff filed Step 1 Grievance No.2006101693 complaining about Bouton's actions.  (Docket Entries No.1, page 6, No.1-3, pages 1-2).  Warden Negbenebor denied the grievance on March 3, 2006, with the notation that plaintiff had "athlete's feet," and that Bouton's medical opinion was that there was "no indication to continue a pass for canvas shoes."  (Docket Entry No.1-3, page 2).  Plaintiff claims he filed a Step 2 grievance on March 6, 2006, but Keith Clendennen at the Huntsville grievance office did not respond to the Step 2 grievance.  (Docket Entries No.1, page 6, No.39, page 5).  Plaintiff attached to his pleading a copy of the unprocessed grievance.  He claims that his mother and brother delivered a copy of these grievances to the Huntsville office.  (Docket Entries No.1, page 6, No.1-3, pages 3-4).  Plaintiff claims in April 2006, John M. Moriarty of the Inspector General Investigations Department closed out his Step 1 and Step 2 case without conducting a proper investigation.  (Docket Entry No.39, page 5).

Plaintiff has also filed supplemental pleadings to support his original claims of deliberate indifference.  Plaintiff claims that in April 2006, Dickerson changed his janitorial assignment to a dorm at the trusty camp.  (Docket Entry No.39, page 4).  On August 8, 2006, plaintiff was ordered to scrape paint off a metal door at the dorm even though he informed the

sergeant that to do so would violate his medical restrictions. (Docket Entry No.9, page 3). That night plaintiff had to use medication to ease the pain in his chest. (*Id.*).

Plaintiff claims on August 7, 2006, PA Bouton again refused to renew the medical pass for canvas shoes. (*Id.*). On August 14, 2006, Dickerson assigned plaintiff to work at the dog kennel. (*Id.*, page 2). On August 25, 2006, plaintiff was ordered to paint the fence at the kennel. (Docket Entry No.8, page 1). As plaintiff painted, he began to suffer severe chest pains and was brought to the infirmary, where a nurse examined him. (*Id.*, pages 1-2). PA Bouton saw plaintiff and remarked that "a[n] inmate will try anything to get out of working." (*Id*., page 2). The nurse retrieved Dr. Dumas, who examined plaintiff. (*Id.*). Dr. Dumas questioned him about his job and plaintiff told her about his medical history and job assignments. (*Id.*). Dumas checked plaintiff's medical records and added additional restrictions to his record on the Unit's computer. (*Id.*). Plaintiff was unassigned for seven days. (*Id.*). Dr. Dumas renewed plaintiff's medical pass for canvas shoes on August 25, 2006.[1] (*Id.*, page 3). Plaintiff also suffered an infection to his left middle finger, which he attributes to defendants' alleged misconduct. (*Id.*).

Plaintiff claims that on March 13, 2007, he was threatened with solitary confinement if he refused to sign a safety sheet which listed the chemicals that he worked with or around as a janitor. (Docket Entry No.29). Plaintiff complained that his medical restrictions precluded him from working with such chemicals. (*Id.*). Plaintiff filed a grievance complaining of the same. (*Id*.). In October, 2007, plaintiff was assigned to the inside medical squad. (Docket Entry No.39, page 16).

Based on the foregoing, plaintiff contends the following persons violated his Eighth Amendment rights to be free from cruel and unusual punishment:

---

[1] Dr. Dumas also ordered foot cream to treat plaintiff's fungal infection on August 25, 2006. (Docket Entry No.39, page 9).

      1.      Todd Bouton refused plaintiff proper medical care without examination, withdrew plaintiff's medical restriction of not wearing closed toe shoes, and refused to renew plaintiff's medical pass for canvas shoes;

      2.      Warden K. Negbenebor refused plaintiff's Step 1 Grievance regarding Bouton's actions;

      3.      Charles Dickerson violated plaintiff's medical restrictions by assigning plaintiff to jobs such as the line force, janitorial services, and the dog kennel; and,

      4.      Keith Clendennen and John M. Moriarty failed to investigate and answer plaintiff's grievances.

(Docket Entry No.39).

Defendants move for summary judgment on grounds that plaintiff has failed to exhaust his administrative remedies, and that he cannot show that defendants were deliberately indifferent to a serious medical condition or that defendants Clendennen, Negbenebor, and Moriarty had the requisite personal involvement to maintain an action against them. (Docket Entry No.57). Defendants assert qualified immunity. (*Id*.).

## II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*,

18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986). Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference–not the result of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). The negligent deprivation of life, liberty, or property is not a constitutional violation. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Moreover, to hold a defendant liable under section 1983, plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

Section 1997(e) of 42 United States Code, as amended by the Prison Litigation Reform Act, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e); *Booth v. Churner*, 532 U.S. 731 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. *Booth*, 532 U.S. at 739. Consistent with Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

TDCJ-CID currently provides for a two-step grievance procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. *Id.*

Defendants contend, and the summary judgment record shows, that plaintiff did not exhaust his administrative remedies with respect to any of his claims. (Docket Entry No.57-4, Exhibit C). Plaintiff's grievance records show that he filed Step 1 Grievance No.2006101693 on February 18, 2006, complaining that PA Bouton would not reissue the medical pass for canvas shoes. (Docket Entry No.57-4, pages 10-11). The grievance was investigated and denied. Plaintiff did not submit a Step 2 Grievance with respect to this matter. Plaintiff also filed Step 1 Grievance No.20051731582 on April 1, 2005, complaining that defendant Dickerson

and others had assigned him to a job in violation of his medical restrictions. (*Id*., pages 19-20). Again, the grievance was investigated and denied. Plaintiff did not file a Step 2 Grievance complaining of the same.

Plaintiff claims that he submitted Step 1 and 2 grievances that were not acknowledged or processed by defendants Clendennen and Moriarty. (Docket Entries No.1, No.39, No.58). Plaintiff claims that his family copied the grievances that he filed complaining of Bouton and mailed them to the Huntsville office. Although plaintiff has attached a copy of an unprocessed Step 2 grievance, he presents no evidence to support his claim that he submitted the grievance in accordance with TDCJ requirements and no evidence that would contravene defendants' summary judgment record. Furthermore, plaintiff does not claim and the record does not show that he grieved the alleged actions of defendants Negbenebor, Clendennen, and Moriarty. Accordingly, plaintiff's claims against all defendants are subject to dismissal for failure to exhaust his administrative remedies.

Plaintiff's claims that defendant Negbenebor denied his grievances and Clendennen and Moriarty failed to investigate or take action on his grievances are also subject to dismissal for reasons other than non-exhaustion. An inmate does not have a constitutionally protected liberty interest in having grievances or complaints resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Moreover, the record does not show that these defendants were personally involved in any of the alleged constitutional violations or that they instituted or implemented a policy that would deprive plaintiff of his constitutional rights. Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983). Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal

connection exits between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Accordingly, plaintiff fails to show that these defendants violated his Eighth Amendment rights. Defendants, therefore, are entitled to summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Plaintiff's Motions to Strike (Docket Entries No.47, No.62) and to Dismiss the Answer (Docket Entry No.48) are DENIED.

2. Plaintiff's Motions to Present Evidence (Docket Entries No.52, No.55, No.61) and to Apply Correct Information in Summary Judgment (Docket Entry No.59) are GRANTED.

3. Defendants' Motions to Seal (Docket Entry No.44), for Stephen M. Pierce to Appear *Pro Hac Vice* (Docket Entry No.49), for an Extension of Time to File Initial Disclosures (Docket Entry No.51), and for Leave to File Motion for Summary Judgment (Docket Entry No.56) are GRANTED.

4. Defendants' Motion for Summary Judgment (Docket Entry No.57) is GRANTED.

5. Plaintiff's Motion for Summary Judgment (Docket Entry No.58) is DENIED.

6. All claims against all defendants are DENIED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

7. All other pending motions, if any, are DENIED as moot.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 23rd day of July, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE